IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JOYCE MARIE MORTIMER,

                    Plaintiff,

vs.                                        Case No. 15-1076-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

## I.  General legal standards

        The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.   The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.   Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.   Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.   Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).   The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.   Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).   The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On August 30, 2013, administrative law judge (ALJ) William H. Rima issued his decision (R. at 17-30). Plaintiff alleges that she had been disabled since September 1, 2011 (R. at 17). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since September 1, 2011 (R. at 19).

4

At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 19).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 20).  After determining plaintiff's RFC (R. at 21-22), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 28).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 29-30). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 30).

## III.  Did the ALJ err in the weight he accorded to the medical evidence?

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's

reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  <u>Robinson</u>, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still

entitled to deference and must be weighed using all of the

following factors:

(1) the length of the treatment relationship and the frequency
of examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area
upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

## A. Physical limitations

    The ALJ found that plaintiff had the physical RFC for

sedentary work, lifting/carrying/pushing/pulling 20 pounds

occasionally and 10 pounds frequently, standing/walking for 2

hours and sitting for 6 hours in an 8 hour workday.  Plaintiff

can occasionally balance, stoop, kneel, crouch, crawl and climb

ramps and stairs, but should not climb ladders, ropes or

scaffolds, and should not reach overhead.  Plaintiff should

avoid concentrated exposure to extreme cold and vibration, and even moderate exposure to hazards (R. at 22).

Dr. Wade Turner was plaintiff's treating physician.  In a progress note on November 15, 2011, he opined that plaintiff is disabled, noting that she has tried very hard to work and maintain a job, but due to back pain, bipolar disorder and Crohn's disease, she is unable to work.  He indicated that her back pain is chronic, and that she cannot stand on her feet very long (R. at 398).  A second progress note dated January 9, 2012, again set forth his opinion that plaintiff was disabled due to failed back syndrome and bipolar disorder.  He again noted that she has tried to work but her mental problems do not let her keep a job very long (R. at 506).

In a letter dated August 16, 2012, Dr. Turner again noted her chronic back pain, and that plaintiff has too much pain or misses too much work to be gainfully employed.  He felt that she could not work due to her back problems.  He also noted that her migraine headaches would interfere with her being gainfully employed (R. at 620).

Dr. Turner also filled out two impairment questionnaires, the first dated January 9, 2012 (R. at 544-551), and the second dated February 8, 2013 (R. at 687-694).  After setting forth her diagnosis, prognosis, and the clinical findings in support of his diagnosis (R. at 544-545, 687-688),  Dr. Turner offers

opinions regarding plaintiff's limitations.  In 2012, Dr. Turner
opined that plaintiff could sit for 7 hours and stand/walk for 1
hour in an 8 hour workday (R. at 546).  In 2013, Dr. Turner
opined that plaintiff could sit for 5 hours and stand/walk for 2
hours in an 8 hour workday (R. at 689).  In 2013, Dr. Turner
opined that plaintiff could lift up to 20 pounds occasionally,
and carry up to 10 pounds occasionally.  He noted that
plaintiff's hands go numb with activity, and therefore has
manipulative limitations.  He further opined that plaintiff
would miss more than 3 times a month.  Dr. Turner stated that
plaintiff had to quit work altogether in September 2011 after
her back surgery (R. at 690-693).

     The ALJ accorded little weight to the opinions of Dr.
Turner (R. at 26).  The ALJ stated that the opinions of Dr.
Turner were without support from the other evidence of record.
For example, Dr. Turner found that plaintiff had marked
manipulative limitations, but indicated that Dr. Turner
performed no objective testing to support his noted manipulative
limitations.  The ALJ further noted that plaintiff denied
radiation of pain into either arm (R. at 26-27).  The ALJ also
noted that treatment records from Dr. Turner do not support the
functional limitations he set out in his reports.  Dr. Henry,
who performed plaintiff's back surgery, found great improvement
post-operatively, with no imposed restrictions offered after

January 2012.  Overall, the ALJ stated that "it appears that the findings of Dr. Turner are based, in part, on the claimant's subjective reports of pain" (R. at 27).  The ALJ finally noted that the medical evidence shows that plaintiff is not fully credible in her allegations of disabling impairments, and that the assessments of Dr. Turner are not consistent with other medical evidence (R. at 27).

The other medical opinion evidence concerning plaintiff's physical impairments is the report of Dr. Paul Kindling, a state agency medical consultant who reviewed the medical report and prepared a physical RFC assessment dated July 16, 2012 (R. at 85-88).  Dr. Kindling reviewed and discussed the reports of Dr. Turner dated November 15, 2011, and January 9, 2012 (R. at 88).  Dr. Kindling opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand/walk for 2 hours and sit for 6 hours in an 8 hour workday (R. at 86).  He found that she had some postural, manipulative and environmental limitations (R. at 86-87).  Dr. Kindling indicated that he reviewed Dr. Turner's progress report noted above, and found that they were quite general and non-specific (R. at 88).

The ALJ's physical RFC findings match the opinions of Dr. Kindling (R. at 21-22, 26, 86-87).  The ALJ found that the opinions of Dr. Kindling are grounded in the evidence of record, and are internally consistent and consistent with the evidence

as a whole.  The ALJ accorded substantial weight to the opinion of Dr. Kindling (R. at 26).

The ALJ also considered the opinions of Dr. Matthew Henry, who performed back surgery on plaintiff on September 1, 2011. On October 12, 2011, Dr. Henry noted that plaintiff rated her improvement at 85% and was doing quite well.  Dr. Henry indicated that her back pain was much better and that the follow up x-rays looked great (R. at 339).  Dr. Henry stated that he would allow plaintiff to return to work at Pizza Hut on Monday with a five-pound weight restriction, that she should stand as needed, with answer phones being the appropriate job for her. He did not want her washing dishes as this would require bending over too much (R. at 330-331, 339).  In a letter dated February 28, 2012, Dr. Henry stated that plaintiff was advised on January 10, 2012 to wean out of her lumbar brace, and was not placed on any restrictions at that point in time.  He said that her prognosis was fair, and would refer to a physiatrist for any further questions regarding activity level and disability (R. at 553).  The ALJ relied on these findings by Dr. Henry when according the opinions of Dr. Turner little weight.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will

not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ gave little weight to the opinions of Dr. Turner, a treating physician, and accorded substantial weight to the opinions of Dr. Kindling, a state agency non-examining physician.  Dr. Kindling reviewed the treatment records of Dr. Turner and Dr. Henry (R. at 88).  The ALJ relied on the opinions of Dr. Henry, plaintiff's treating surgeon, to discount the opinions of Dr. Turner, plaintiff's treating physician (R. at 27).[1]

---

[1] Dr. Turner stated that plaintiff had to quit working altogether in September 2011 after her back surgery (R. at 693). However, Dr. Henry, plaintiff's treating surgeon, who performed the back surgery, allowed plaintiff to return to work at Pizza Hut on October 12, 2011 with weight and bending restrictions (R. at 339).  On February 28, 2012, Dr. Henry indicated that plaintiff was not placed on any restrictions as of January 10, 2012 (R. at 553).  Plaintiff indicated that she continued to work at Pizza Hut until November 2011 (R. at 41).  The ALJ noted that she continued to work for two months after her alleged onset date of September 1, 2011  (R. at 26).

The court will not reweigh the medical evidence regarding plaintiff's RFC.  The conclusions of the ALJ regarding the relative weight accorded to the medical opinion evidence that addressed plaintiff's physical limitations are reasonable, and the ALJ's physical RFC findings are supported by substantial evidence.  The ALJ did not need to explicitly discuss all of the § 404.1527 factors for each of the medical opinions.  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).  It is sufficient if the ALJ provided good reasons in her decision for the weight she gave to the treating source opinions.  Nothing more is required.  Id.  The court finds that the balance of the ALJ's analysis of the medical opinion evidence regarding plaintiff's physical RFC is supported by substantial evidence.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores, the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

**B. Mental limitations**

The ALJ found that plaintiff had the mental RFC to understand and remember simple instructions.  Plaintiff can carry out simple tasks that do not involve interaction with the general public (R. at 22).

The record includes a mental RFC assessment and questionnaire by Tobe Schneider, an advanced registered nurse practitioner (ARNP), who provided mental health treatment to the plaintiff.  It is dated January 5, 2012 (R. at 508-515).  The assessment found plaintiff markedly limited in 6 categories, moderately limited in 11 categories, mildly limited in 1 category, and not limited in 2 categories (R. at 511-513).  The ALJ found that the opinions of ARNP Schneider are not supported by the treatment notes or plaintiff's report of activities. Furthermore, according to the ALJ, ARNP Schneider indicated that their entire session on January 5, 2012 dealt with reviewing the questionnaire and completing the paperwork, indicating that the form was based, at least in part, on plaintiff's subjective reports.  The ALJ gave little weight to the opinions of ARNP Schneider (R. at 28).  The notes of ARNP Schneider from January 5, 2012 confirm that the entire session was devoted to completion of the questionnaire paperwork, and the findings of ARNP Schneider in the notes are prefaced with "Per verbal report of Joyce," "She reports continued issues with," and "She reports when depressed." (R. at 501), which provides support for the ALJ's assertion that the opinion expressed were based, at least in part, on plaintiff's subjective reports.

Another treatment provider, ARNP Gaunt, prepared a similar assessment and questionnaire on March 4, 2013 (R. at 695-702).

14

The assessment found plaintiff mildly limited in 5 categories,
moderately limited in 6 categories, and markedly limited in 9
categories (R. at 698-700).[2]  ARNP Gaunt opined that plaintiff
was incapable of even low-stress jobs and that she would likely
miss more than 3 days of work a month (R. at 701-702).  The ALJ
found that the findings of ARNP Gaunt are not consistent with
GAF ratings of 55 to above 60 during the course of her
treatment.[3]  (ARNP Gaunt had indicated that plaintiff's current
GAF was 45-50, and her lowest in the past year was 45 (R. at
695)).  The ALJ found that the overall evidence did not support
that the plaintiff has significant difficulty interacting with
others or that her impairments would preclude full-time work.
The ALJ assigned little weight to her opinions (R. at 28).

A review of GAF scores in her treatment notes on or after
her alleged onset date of September 1, 2011 show GAF scores

---

[2] A second assessment by ARNP Gaunt, dated January 29, 2014, after the ALJ decision of August 30, 2013, but before review by the Appeals Council, found plaintiff mildly limited in 10 categories, moderately limited in 4 categories, and markedly limited in 6 categories (R. at 742-749).

[3] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders.  The scores in this case represent the following:

> 61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning...but generally functioning pretty well, has some meaningful interpersonal relationships**.

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

primarily in the 54-60 range (R. at 372, 497-499, 500-502, 703-709).  Only on March 4, 2013 did the notes indicate a current GAF of 50 (R. at 705).  However, the notes showed current GAF scores of 66 on April 30, 2012, July 30, 2012 and January 22, 2013, and a current GAF of 55 on April 9, 2013 and May 7, 2013 (R. at  708-09, 707, 706, 704, 703).  Thus, the evidence generally supports the ALJ's assertion that the GAF ratings in the treatment notes ranged from 55 to above 60.  GAF scores may be of considerable help to the ALJ in formulating the RFC, although they are not essential to the RFC's accuracy.  Harper v. Colvin, 528 Fed. Appx. 887, 891 (10th Cir. July 1, 2013); Petree v. Astrue, 260 Fed. Appx. 33, 42 (10th Cir. Dec. 28, 2007).

Plaintiff was first seen by a consulting psychologist, Dr. Steffan, on July 11, 2012 (R. at 614-616).  Following an interview with the plaintiff, Dr. Steffan stated that plaintiff demonstrated difficulty with confusion, attention, concentration, and working and short-term memory.  She had difficulty with understanding instructions of several mental status items and maintaining adequate pace on items.  According to Dr. Steffan, these difficulties would interfere with her understanding, remembering, and carrying out of work instructions and procedures for simple and complex work tasks. Her episodes of confusion and mood disturbance would also cause

her problems with interpersonal relations, handling work
pressures, and adapting to a regular work environment (R. at
616).

Dr. Steffan again saw plaintiff on August 29, 2012, and
performed an IQ and a memory test on the plaintiff (R. at 621-
623). Dr. Steffan found that plaintiff evidenced poor effort on
tasks, gave up easily on items, and frequently called attention
to her perceived memory problems and the extreme difficulty of
the items (even items of easy to moderate difficulty). These
test data are also inconsistent with her functioning in the
community and history of independent living, particularly when
taking into consideration that she has had daily memory problems
since her early 20s. Dr. Steffan concluded that some degree of
distortion, whether conscious or unconscious, is likely present
in these test results. Therefore, he concluded the results of
the tests are unreliable, and therefore no valid conclusions
about her functional abilities can be drawn from these results
(R. at 622-623).

The ALJ gave partial weight to the opinions of Dr. Steffan.
The ALJ stated that the evidence, including plaintiff's more
recent treatment history does not support that plaintiff has
significant difficulty maintaining adequate concentration for
simple tasks, or that her impairments would preclude full-time
work. The ALJ further noted that the objective testing was

deemed unreliable and that no valid conclusions could be drawn from the results.  The ALJ stated that Dr. Steffan's opinion that plaintiff would have difficulty with complex tasks is consistent with the record and is afforded substantial weight (R. at 23-24, 27).

A mental RFC assessment was performed by a non-examining consultant, Dr. Bergmann-Harms on September 10, 2012 (R. at 83-84, 88-90).  Dr. Bergmann-Harms found that plaintiff was moderately limited in 5 categories, and in her narrative indicated that plaintiff can understand and remember simple instructions, can carry out simple tasks that do not involve interaction with others with adequate concentration, persistence and pace, and should avoid interaction with the public due to anxiety (R. at 88-90).  The ALJ accorded substantial weight to this opinion (R. at 27).

Finally, a mental RFC assessment was also performed by another non-examining consultant, Dr. Raclaw on December 28, 2012 (R. at 638-640).  Dr. Raclaw found that plaintiff had 4 moderate limitations (R. at 638-639), and in his functional capacity assessment, Dr. Raclaw stated that plaintiff retains the ability to understand, sustain focus, use her memory, and relate with others sufficiently well to adjust to simple rote occupational activity (R. at 640).  The ALJ accorded substantial weight to this opinion (R. at 27).

As noted above, the court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).  The ALJ gave little weight to the opinions of ARNP Schneider and ARNP Gaunt.  The court finds no clear error in his analysis of their opinions.  The ALJ gave some weight to the opinions of Dr. Steffan, who examined and tested the plaintiff. Although Dr. Steffan's initial assessment, based on in interview with the plaintiff, raised serious questions about plaintiff's employability, the ALJ noted that subsequent objective testing by Dr. Steffan showed a poor effort by the plaintiff on the tests, resulting in test data inconsistent with her functioning in the community.  Dr. Steffan concluded that some degree of distortion was likely present in those test results, which is a legitimate basis for questioning the initial opinions expressed by Dr. Steffan prior to the testing.

The ALJ made mental RFC findings consistent with the opinions of Dr. Bergmann-Harms and Dr. Raclaw (R. at 22, 88-90, 640).  Both Dr. Bergmann-Harms and Dr. Raclaw discussed the reports from Dr. Steffan (R. at 84, 640).  The court finds that the conclusions of the ALJ regarding the relative weight

accorded to the medical opinion evidence in making the mental
RFC findings are reasonable, and that the balance of the ALJ's
analysis of the medical opinion evidence regarding plaintiff's
mental limitations is supported by substantial evidence.

## IV.  Are the ALJ's credibility findings supported by substantial evidence?

Credibility determinations are peculiarly the province of
the finder of fact, and a court will not upset such
determinations when supported by substantial evidence.  However,
findings as to credibility should be closely and affirmatively
linked to substantial evidence and not just a conclusion in the
guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th
Cir. 1995).  Furthermore, the ALJ cannot ignore evidence
favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413,
1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require
a formalistic factor-by-factor recitation of the evidence.  So
long as the ALJ sets forth the specific evidence he relies on in
evaluating the claimant's credibility, the ALJ will be deemed to
have satisfied the requirements set forth in Kepler.  White v.
Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,
206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need
not discuss every relevant factor in evaluating pain testimony.
Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An

ALJ must therefore explain and support with substantial evidence
which part(s) of claimant's testimony he did not believe and
why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir.
2002).  It is error for the ALJ to use standard boilerplate
language which fails to set forth the specific evidence the ALJ
considered in determining that a claimant's complaints were not
credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir.
2004).  On the other hand, an ALJ's credibility determination
which does not rest on mere boilerplate language, but which is
linked to specific findings of fact fairly derived from the
record, will be affirmed by the court.  White, 287 F.3d at 909-
910.

     In assessing plaintiff's credibility, the ALJ considered
the fact that plaintiff continued to work at Pizza Hut for two
months after her alleged onset date.  In fact, Dr. Henry,
plaintiff's surgeon, allowed plaintiff to return to work in
October 2011 with some limitations, and in February 2012 placed
no restrictions on plaintiff.  Dr. Henry noted that plaintiff
rated her improvement at 85% after the surgery, and Dr. Henry
indicated that her back pain was much better and her x-rays
looked great.  Plaintiff's GAF scores indicates either moderate
or mild mental limitations.  Finally, her attempt to distort the
test results with Dr. Steffan by making a poor effort and giving
up easily on items was also a legitimate factor to consider.

These findings provide sufficient support for not finding plaintiff fully credible.  The ALJ discussed in detail the medical evidence, and made RFC findings supported by substantial evidence, including medical opinion evidence.  The court will not reweigh the evidence.  The court finds that the balance of the ALJ's credibility analysis is supported by substantial evidence.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores, the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 1st day of August 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge